Robert Wisniewski, Esq.
Robert Wisniewski, P.C.
17 State Street - Suite 820
New York, New York 10004
(212) 267-2101
rw@rwapc.com
Attorney for Plaintiffs

Leon Greenberg
Attorney at Law
1811 S. Rainbow Blvd. - Suite 210
Las Vegas, Nevada 89145
(702) 383-6085
leongreenberg@overtimelaw.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAWNICE BETTS and BOYSING SAMUEL, JR.,
Individually and on behalf of all others
similarly situated,

                               Plaintiffs

               -against-

AMAZON.COM SERVICES LLC.,
f/k/a AMAZON SERVICES.COM, INC.

                              Defendant.
-------------------------------------------------------------------X

## CLASS ACTION COMPLAINT

1.     Plaintiffs Shawnice Bettis ("Bettis") and Boysing Samuel, Jr. ("Samuel")("Bettis and Samuel are, collectively, "Named Plaintiffs") on behalf of themselves and all others similarly situated, by their attorneys, Robert Wisniewski and Leon Greenberg, as and for their Complaint against the defendant, Amazon.com Services LLC f/k/a Amazon.com Services, Inc. ("Amazon" or "Defendant") state as follows:

## NATURE OF ACTION

2. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated to recover unpaid wages, unpaid overtime wages, and other actual damages as well as liquidated damages and reasonable attorneys' fees and costs under the New York Labor Law Articles 6 and 19, and §195, §198, §193, and §663 (the "NYLL"), and various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143 as well as the New York State common law.

3. The violations of New York Labor Law at issue arose because Defendant, as more fully detailed *infra,* would have Plaintiffs and those similarly situated to Plaintiffs spend time performing activities that the New York Labor Law deems "work" for which compensation must be paid to such hourly employees and for which Defendant paid no compensation whatsoever to Plaintiffs and others similarly situated.

4. Defendant also violated the New York Labor Law by failing to indicate on statements it provided to Plaintiffs and those similarly situated that such time had been worked by those persons for which such compensation was owed but had not been paid.

## PARTIES, JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332, the Class Action Fairness Act, in that Defendant is not a citizen of the State of New York and the amount in controversy exceeds $5,000,000.

6. Venue is proper as per 28 U.S.C. §1391(b) as the acts and violations of law complained of took place within this District and Defendant may be found within the district.

7. Amazon is a Delaware limited liability company with its principal place of business and headquarters in the State of Washington.

8. Amazon is subject to personal jurisdiction of this Court because at all relevant times it has purposefully availed itself of the privileges of conducting activities in the State of New York and established minimum contacts sufficient to confer jurisdiction. Amazon does business in New York, maintains offices in New York, advertises in New York, markets to New York consumers, employs thousands of New York citizens, including Named Plaintiffs, in its warehouses located throughout the State of New York and the violations of the law forming the basis of this lawsuit occurred within the State of New York.

9. At all relevant times, Named Plaintiffs were and still are residents of the State of New York and one of the Named Plaintiffs resides in this District.

10. The Named Plaintiffs are "Employees" within the meaning of the NYLL.

11. Amazon is an "Employer" within the meaning of the NYLL.

## JURY DEMAND

12. Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

13. Currently, and during each of the six years and seven months prior to the filing of this action, Defendant has employed well over six thousand (6,000) persons as

hourly compensated "associates" at its JFK8 warehouse/fulfillment center located in Staten Island, New York, and thousands of additional such similarly situated persons at numerous other warehouse/fulfillment/delivery centers ("<u>Amazon Warehouses</u>") throughout New York State.

14. Defendant employs these thousands of workers whom it calls "associates" in various positions which are endemic to its business, including those of loaders, packers, pickers, diverters, stowers, line leaders, water spiders, and problem solvers.

15. Named Plaintiff Boysing Samuel, Jr. is a former employee of Defendant who has worked at Amazon Warehouse JFK8 during the years from February 2021 through September 2022 as an "associate" whom Defendant agreed to compensate for him for his work at a regular hourly rate of between $15.00 and $19.00 an hour.

16. Named Plaintiff Shawnice Bettis is a former employee of Defendant who has worked at Amazon Warehouse JFK8 from approximately August of 2023 through February of 2024 as an "associate" whom Defendant agreed to compensate her for her work at a regular hourly rate of between $15.00 and $19.00 an hour.

17. The violations of NYLL alleged herein sustained by the Named Plaintiffs involving the non-payment of promised regular wages, overtime wages and/or other earned but unpaid wages was constant throughout their employment with Defendant at JFK8 occurring in most if not all, workweeks of such employment.

18. The violations of NYLL alleged herein sustained by the Named Plaintiffs were common to a large group of similarly situated, hourly-compensated employees of

Defendant who also worked at JFK8 and all of the other Amazon Warehouses in the State of New York employing persons to perform the same or similar work as performed by the Named Plaintiffs, such similarly situated persons numbering well over 10,000 persons.

19. Defendant is one of the largest e-commerce providers to retail consumers whereby it sells goods on it website and then delivers them to consumers as quickly as possible.

20. To that end, Defendant has created a network of Amazon Warehouses – fulfillment centers, sortation centers and delivery stations. Generally, workers at fulfillment centers fulfill customers' orders, package them into boxes and sort them for delivery in particular locations. Defendant then sends these packages to sortation centers where workers sort packages to send them to the delivery stations located closer to the consumer, where packages are further sorted for local delivery by drivers employed by Defendant's delivery service partners.

21. Amazon Warehouses are incredibly large operations – most of them city-block size, some of gargantuan proportions covering the area of several football fields, full of conveyor belts and, where possible, automated and computerized. Hence the need to employ thousands of employees in one location.

22. To monitor such a multitude of workers and to keep track of their time worked, Defendant uses several electronic security, productivity and time-keeping systems. Each employee, Named Plaintiffs included, is provided with an identification badge containing a magnetic stripe and other electronic information that he or she

must use at Amazon Warehouses. Named Plaintiffs were also issued such badges.

23. Employees must use, or swipe, such badges at the turnstile to enter the warehouse at which they work before their shift begins and to swipe them at the turnstiles after they clock out at the end of the shift to leave the warehouse. The security system captures each employee swipe at the time of his or her entry into, and exit from, the Amazon Warehouse.

24. As speed of delivery of a purchased package to the consumer is the name of the game in e-commerce, at all relevant times, Defendant instituted incredible productivity quota for associates. This is why all employees in the warehouse have to show up on time, work very fast, and maintain discipline.

25. To ensure that warehouse employees show up on time, work very fast and maintain discipline of work, Defendant implemented a 13 point discipline scale. Once an employee reaches 13 disciplinary points, he or she will be terminated.

26. Some of the demerit or disciplinary points that Defendant instituted at its warehouses in the State of New York include clocking in later than five minutes from the start of the shift, or being taking tooo long for the so-called "time-off task", such as being away from one's work station, not performing assigned duties by resting, or taking too long to go to the bathroom. When an employee clocks in more than five minutes after the start of the shift or takes too much time for "time-off task" activities, he or she is punished with demerit points.

27. Defendant uses a centralized electronic system within each Amazon Warehouse to monitor employee time Defendant considers as "work." At relevant periods,

employee time is transmitted from each Amazon Warehouse to Defendant's centralized time-keeping system.

28. Employees can record the time that Defendant considers "work" in two ways. They can use their badges to swipe them at the time clocks which are sparcely placed in various areas of each warehouse. Or they can use the so-called AtoZ app, issued to them by Defendant around the onset of the COVID pandemic, except that they can use the AtoZ app only after they enter the warehouse and within five minutes before the start of the shift and before they line up to start the exit process form the warehouse.

29. Defendant has the ability to ensure via electronic means that the AtoZ app is used properly. Moreover, Defendant's systems have the ability to distinguish how and where the employee is entering the building, how he is clocking into the time keeping system and by what method.

30. Whether employees use the badge to swipe in or the AtoZ app to start the shift, they can only clock in five (5) minutes before the start of the shift which, upon information and belief, begins at every warehouse with a pep talk meeting and the assignment of duties to all employees who begin the shift.

31. Moreover, at many Amazon Warehouses, those entering the bulding through the turnstiles had to navigate amongst the employees who had concluded their shift and were leaving the warehouse. Both Named Plaintiffs encountered such conditions on a daily basis at JFK-8 Warehouse.

32. Given the huge size of each Amazon Warehouse, and the sparsity of the time

clocks, the time spent by the Named Plaintiffs and others similarly situated to them at every Amazon Warehouse, walking between the entry into the warehouse and the time clock was between five (5) and ten (10) minutes (the (the "Pre-Shift Activity").

33. The Pre-Shift Activity took much longer during the COVID pandemic. Soon after the COVID pandemic began until some time by the end of the year 2022, Defendant instituted and maintained COVID screening for all employees at every Amazon Warehouse (the "Pre-Shift Covid Screening"). Named Plaintiff Samuel and those similarly situated to him were forced to que up single file, six feet apart, for the Pre-Shift Covid Test well before they swiped their badges to enter the JFK-8 warehouse. During that period, the single-file line to enter the warehouse was very long and it took approximately another ten (10) to fifteen (15) minutes for Named Plaintiff Samuel and others similarly situated to congregate outside so as to enter the warehouse for the Pre-Shift Activity.

34. At all times the Pre-Shift Covid Screening took place at each warehouse after an employee entered the building and Defendant's security captured his or her entry, and was accomplished in two ways either through machines that, or health stations manned by Defendant's employees who, took employees' temperature to determine whether an employee could work on a particular day. At all times, screening occurred at each Amazon Warehouse after the employee entered the warehouse but before he or she clocked in at the beginning of the shift. During the Covid pandemic, after entering the warehouse, the employees had to maintain a

single file and observe a six-foot social distancing before beginning work.

35. Upon information and belief, during the Covid pandemic the Pre-Shift Activity that included the Pre-Shift Covid Screening, took up to half an hour per employee, Named Plaintiff Samuel included.

36. Defendant's production assistants and shift managers are in charge of monitoring workers' productivity. To ensure the high productivity quota, such managers monitor, among others, "time off task" which is the time that each associate is not working. For example, employees who take too much time to go to the bathroom may be punished for being too long on "time off task" and receive demerit points.

37. As the managers are judged, among others, on the productivity of associates, some managers at various Amazon Warehouses, at all relevant times, force associates to clock in and out for short breaks of twenty minutes or less, such as for going to the bathroom (the "Mid-Shift Activity"), Named Plaintiff Bettis was forced by her manager to clock in and out when she went to the bathroom because she worked at an area of the warehouse which was far away from the bathroom and she is not a fast walker.

38. As a term and condition of their employment, the Named Plaintiffs, and those similarly situated to them in each Amazon Warehouse, were required, after they clocked out of their shift, to submit to a security screening (the "Shift-End Security Screening") before being allowed to leave the Amazon Warehouse where they worked.

39. Generally, after clocking out at the end of their shift, the Named Plaintiffs and all

others similarly situated at the JFK-8 and all others similarly situated in all othe warhouses have had to line up single-file and walk slowly through the security area which was placed before the turnstiles at which they swipe out to leave the warehouse.

40. Upon information and belief, at all relevant times, the Shift-End Security Screening has been implemented in all Amazon Warehouses throughout the State of New York.

41. The time necessary at the end of the shift for the Named Plaintiffs and others similarly situated at warehouse JFK-8 to leave the warehouse after clocking out and undergoing the Shift-End Security Screening is referred to as "the Post-Shift Activity."

42. it lasted between five (5) and ten (10) minutes. But during the Covid pandemic, that is from some time in March or April 2020 through some time in late 2022, when employees had to observe social-distancing, hte Post-Shift Activity lasted on average an additonal five (5) to ten (10) minutes.

43. Moreover, for those employees who were selected by the security guards for closer inspection have to stay around to have their bags or knapsacks examined during the Shift-End Security Screening in accordance with Defendant's protocols, the time for the Post-Shift Activity could have taken much longer.

44. Upon information and belief, at all relevant times, given the size of the warehouse in which they work, others similarly situated to the Named Plaintiffs working at Amazon Warehouses in the State of New York take the same time as the

employees of JFK-8 for the Post-Shift Activity.

45. Defendant paid wages to the Named Plaintiffs and those similarly situated based only on the time Defendant recorded as working time for such persons in its timekeeping system. Defendant did not pay wages for time that the Named Plaintiffs and those similarly situated worked for Defendant that was not recorded as working time in that timekeeping system.

46. Named Plaintiffs and those similarly situated were required by Defendant to work at their assigned Amazon Warehouse for shifts with specified start and end times, typically scheduled to be in excess of 8 or 10 hours in length each workday.

47. The periods of time the Named Plaintiffs and those similarly situated spent in Pre-Shift Activity, the Mid-Shift Activity and Post-Shift Activity was "working time" for the purposes of NYLL as alleged herein, including, but not limited to, it being "working time" as specified by 12 NYCRR 142-2.1(b) for which certain minimum amounts of wages had to be paid because it was time that Defendant required such persons be at their place of employment and be available for work and/or engage in activities required by Defendant and/or time during which they were required by Defendant to engage in traveling as part of their duties as an employee.

48. Such time was consumed by Named Plaintiffs and others similarly situated at the insistence and direction of Defendant. They received no benefit from the activities they engaged in during those time periods and were unable to use those periods of time for their own benefit as they chose. The activities Defendant

forced them to engage in during those time periods solely benefitted Defendant, by ensuring the monitoring of employees by Defendant's security and productivity systems, reducing potential thefts, reducing the potential spread of Covid-19 in its facilities or through products it shipped, and in allowing Defendant to avoid the expense of installing more time clocks and/or security screening lines and/or Covid-19 test screening stations and/or paying such persons for the time consumed by such activities.

49. As a result of being forced to spend working time in Pre-Shift Activity, Mid-Shift Activity and Post-Shift Activity, Named Plaintiffs, or some of them, and those similarly situated during most of their workweeks at their assigned Defendant warehouse were working more than 40 hours a week and during such weeks the unpaid working time spent in such activities should have been paid at applicable overtime (time and one-half) wage rates pursuant to 12 NYCRR 142-2.2.

50. In the event a Named Plaintiff or person similarly situated spent such time working on those activities during weeks they did not exceed a total of 40 hours of work for Defendant such unpaid time spent on those activities should have been paid to them at their regular hourly rate otherwise paid to them for their work or at the hourly rates specified in 12 NYCRR 142-2.1(b).

51. Defendant, despite its obligation to pay such wages to the Named Plaintiffs and those similarly situated for such working time, paid those persons no wages whatsoever for the Pre-Shift Activity, Mid-Shift Activity and Post-Shift Activity.

52. Defendant's aforesaid failures to pay Named Plaintiffs and others similarly

situated the wages they were owed, as alleged *supra*, for the work they performed for Defendant were willful and not based upon any good faith belief by Defendant that such wages were not owed by Defendant to those persons.

53. Plaintiffs allege, and verily believe, that while the Pre-Shift Activity, Mid-Shift Activity or Post-Shift Activity are or may be excluded from work time under the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 *et seq*., under the federal wage laws, the Portal-to-Portal Act was not adopted by the New York Labor Law and there is no authoritative case law stating otherwise.

## CLASS ACTION ALLEGATIONS

54. The claims made in this case are brought on a class action basis on behalf of the Named Plaintiffs and all similarly situated persons pursuant to Fed. R. Civ. P. §23, and more specifically, on behalf of all persons employed at Amazon Warehouses in the State of New York within the applicable statute of limitations period. More specifically, it is brought on behalf of all such persons employed by Defendant on an hourly compensation basis within the last six years and seven months who are owed unpaid wages and/or overtime wages and/or entitled to seek by Defendant as a result of its policies of not compensating such persons for working time Defendant forced them to spend time doing Pre-Shift Activity, Mid-Shift Activity and Post-Shift Activity, and/or are entitled to damages for Defendant's violations of New York Labor Law § 195(3), as more specifically alleged herein. The class may include one or more sub-classes if the Court finds that more manageable.

55. The Plaintiffs are informed and believe, and based thereon allege that there are over 10,000 putative class action members and the joinder of such persons individually in any action, or their pursuit of individual actions to seek a remedy for their common injury, would be impractical, and therefore such persons are numerous enough in amount to warrant the granting of class action certification pursuant to Fed. R. Civ. P. §23.

56. There is a well-defined community of interest in the questions of law and fact affecting the class as a whole. Proof of a common or single set of facts will establish the right of each member of the class to recover. These common questions of law and fact predominate over questions that affect only individual class members. Named Plaintiffs' claims are typical of those of the class.

57. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Due to the typicality of the class members' claims, the interests of judicial economy will be best served by adjudication of this lawsuit as a class action. This type of case is uniquely well-suited for class treatment since Defendant's practices were uniform and the burden is on Defendant, as an employer, to establish that its method for compensating the class members and providing them with statements complies with the requirements of New York Labor Law.

58. Named Plaintiffs will fairly and adequately represent the interests of the class and have no interests that conflict with or are antagonistic to the interests of the class and have retained to represent them competent counsel experienced in the

prosecution of class action cases and will thus be able to appropriately prosecute this case on behalf of the class.

59. Named Plaintiffs and their counsel are aware of their fiduciary responsibilities to the members of the proposed class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for all members of the proposed class.

60. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. In addition, the class members' individual claims are small in amount and they have no substantial ability to vindicate their rights, and secure the assistance of competent counsel to do so, except by the prosecution of a class action case.

## AS AND FOR A FIRST CLAIM FOR RELIEF PURSUANT TO NEW YORK LABOR LAW SECTIONS 198 AND 663 FOR UNPAID WAGES

61. Named Plaintiffs and others similarly situated repeat and reallege each and every allegation previously set forth.

62. Named Plaintiffs, on behalf of themselves, and all persons similarly situated, bring this first claim for relief pursuant to New York Labor Law Sections 198 and 663, providing, *inter alia,* that persons employed in New York may seek a judgment for the monetary relief specified therein against their employer when

such employer has paid those employees an amount less than the wage to which he or she is entitled to under the provisions of New York Labor Law.

63. As detailed, *supra,* Defendant has failed to pay Named Plaintiffs and those similarly situated the wages owed to them for the various periods of time they engaged, as required by Defendant, in the Pre-Shift Activity, Mid-shift Activity, and Post-Shift Activity, in violation of New York Labor Law, including, but not limited to, 12 NYCRR 142-2.2 and 12 NYCRR 142-2.1(b).

64. As a result of Defendant's violations of New York Labor Law, Named Plaintiffs, on behalf of themselves and all persons similarly situated, seek all relief that is available to them pursuant to New York Labor Law Sections 198 and 663 to remedy Defendant's failure to pay them the wages it was required to pay them under New York Law, including:

    (A)    A judgment for all wages they are owed that Amazon has failed to pay them, along with an award of interest accrued on such amounts of unpaid wages from when they were due pursuant to New York Labor Law § 198 and § 663;

    (B)    A judgment equal to an additional 100% of the unpaid wages that Amazon owes them as a liquidated damages amount as provided for by New York Labor Law § 198(1-a) and § 663(1);

    (C)    A judgment for their attorneys' fees and all other costs and monetary relief available to them as a result of Amazon's failure to pay such wages owed to them pursuant to New York law

as provided for by New York Labor Law § 198 and § 663(1).

## AS AND FOR A SECOND CLAIM FOR RELIEF PURSUANT TO NEW YORK LABOR LAW SECTION 198 FOR VIOLATIONS OF NEW YORK LABOR LAW SECTION 195(3)

65. Named Plaintiffs and others similarly situated repeat and reallege each and every allegation previously set forth.

66. Named Plaintiffs, bring this second claim for relief pursuant to New York Labor Law Section 198(1-d), providing, *inter alia,* that persons employed in New York who are not provided with the statements required by New York Labor Law Section 195(3), may bring a civil action for damages for $250.00 for each day that such violation has occurred for an amount that does not exceed $5,000 along with an award of costs, attorney's fees, and injunctive and declaratory relief.

67. New York Labor Law Section 195(3) imposed a duty upon Defendant to furnish the Named Plaintiffs and those similarly situated with every payment of their wages a statement that included, among other things, their regular hourly rate or rates of pay, their overtime rate or rates of pay, the number of regular hours they worked, and the number of overtime hours that they worked.

68. While Defendant provided certain statements to the Named Plaintiffs and those similarly situated with every payment of wages, those statements did not comply with the requirements of New York Labor Law Section 195(3). Specifically, these statements did not include full and accurate statements of the amount of regular hours and overtime hours worked by the Named Plaintiffs and those similarly situated spent on the Pre-Shift Activity, Mid-Shift Activity and Post-

Shift Activity.

69. That failure arose because certain amounts of time worked by those persons, as alleged in the First Claim for Relief, was not recorded on or included in those statements' recitals of the amount of regular hours and overtime hours worked by such persons for Defendant.

70. As a result of Defendant's aforesaid violations of New York Labor Law Section 195(3) the Named Plaintiffs, on behalf of themselves and all persons similarly situated, seek all relief that is available to them pursuant to New York Labor Law Section 198 to remedy such violations, including:

    (A) A judgment of $250 for each Named Plaintiff and others similarly situated, up to a maximum of $5,000 for each such person, for each day that such New York Labor Law Section 195(3) have existed;

    (B) Appropriate injunctive and declaratory relief that will ensure Amazon does not continue in the future to violated New York Labor Law Section 195(3), in the form of an injunction requiring it to include on the statements it furnishes to its employees the working time it has failed to include on such statements, the nature of such working time being specified in the First Claim for Relief herein;

    (C) A judgment for their attorneys' fees and all other costs interest and monetary relief available to then as a result of Amazon's violation of New York Labor Law Section 195(3) as

provided for by New York Labor Law § 198.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
October 29, 2024

                                      Respectfully submitted,

*/s/Robert Wisniewski*
Robert Wisniewski, Esq.
Robert Wisniewski P.C.
17 State Street - Suite 820
New York, NY 10004
(212) 267-2101
rw@rwapc.com
Attorney for Plaintiffs

*/s/ Leon Greenberg*
The Law Office of Leon Greenberg
Admitted in New York
1811 S. Rainbow Blvd. - Suite 210
Las Vegas, Nevada 89145
(702) 383-6085
leongreenberg@overtimelaw.com
Attorney for Plaintiffs